**In re Lonny Kenneth CAMBERN, and Wife, Judith Ann Cambern d/b/a Caprock Operations, d/b/a Sno–Biz and f/d/b/a Caprock Engineers, Debtors.**

**Bankruptcy No. 90–90461.**

United States Bankruptcy Court,
E.D. Texas,
Lufkin Division.

Oct. 18, 1991.

James A. Walters, Godwin, Carlton & Maxwell, P.C., Dallas, Tex., for movant/debtor.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for consideration of the Motion of Lonny Kenneth Cambern, and wife, Judith Ann Cambern d/b/a Caprock Operations, d/b/a Sno–Biz and f/d/b/a Caprock Engineers, hereinafter ("Debtors"), for Reconsideration of an Order Approving the Allowance of Compensation and Expenses pursuant to a regular setting on January 23, 1991, in Beaumont, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all the issues presented to the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed for relief under Chapter 11 of the Bankruptcy Code on June 20, 1990. Although Debtors' Petition for Relief was filed in the Lufkin division of the Eastern District of Texas, the Debtors chose as counsel of choice the law firm of Godwin, Carlton & Maxwell, hereinafter ("Applicant" or "counsel"), a highly regarded Dallas, Texas, law firm with offices in the Northern District of Texas. On July 30, 1990, the Court entered an Order approving Debtors' choice of counsel.

Subsequently, an Application for Compensation and Reimbursement of Expenses pursuant to 11 U.S.C.A. §§ 330 and 331 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016 was filed by Debtors for the express purpose of authorizing payment to Applicant of interim fees in the amount of $49,202.50 and interim expenses in the amount of $2,475.05. After a thorough review of Applicants' fee application, the Court awarded interim fees in the amount of $39,575.25 and interim expenses in the amount of $2,475.05. The Court reduced Applicants' request for 1) an unnecessary double-team expense for a hearing on September 18, 1990 ($950.00); 2) for excessive time spent on formulating and filing both the Application for Employment as well as the Application for Compensation and Expenses ($650.00); and 3) charging fees in excess of the informal $150.00 maximum fee cap, i.e. the local rate, for services rendered ($8,035.25). On November 28, 1990, Debtors filed a Motion for Reconsideration of this Court's order pursuant to Federal Rule of Bankruptcy Procedure 9024.

When the Motion for Reconsideration came on for hearing Applicant was represented by the attorney whose reductions in fees had accounted for $7,737.50 of the $8,035.25 ultimately reduced for charging fees in excess of this Court's mandatory fee cap. Counsel for Applicant has been practicing law for approximately 30 years, the last ten of which have been devoted almost exclusively to the practice of bankruptcy law. Counsel is double certified by the Texas Board of Legal Specialization in both areas of consumer and business bankruptcy law and is a member of the American Bankruptcy Institute as well as numerous other professional organizations. Counsel enjoys an excellent regional reputation and is a frequent contributor and speaker at various bankruptcy seminars. Counsel is licensed to practice in all of the district courts in Texas.

Counsel testified that his normal hourly rate in Dallas, Texas, is $225.00 per hour. He further testified that prior to accepting this case he voluntarily reduced this hourly rate to $200.00 per hour which reflects his normal hourly rate for agricultural bankruptcies in spite of the fact that the issues involved in this case involve a reorganization of the interests of a debtor in the oil and gas business. Counsel testified that on numerous occasions in the past he has received awards in excess of $200.00 per hour in the Northern District of Texas in recognition of the superior nature of his work product. Counsel also argued that this Court's imposition of a $150.00 fee cap on his services resulted in an unrealistic fee award in light of this Court's award of $125.00 per hour for a fourth year associ-

ate of Applicant who contributed substantial time to the progress of this case.

Upon the conclusion of counsel's testimony, while offering no criticism of counsel's work product, the Court queried counsel why Dallas attorneys should enjoy a premium hourly rate for handling a case before this Court which in this Court's opinion could have been handled by any number of competent local counsel who would have been subject to this Court's mandatory fee cap. This Court expressed some concern that counsel was advancing the position that his entitlement to a rate in excess of this Court's local rate stemmed more from his credentials rather than his accomplishments in Debtors' bankruptcy. In response, counsel advanced the argument that notwithstanding the prevailing hourly rate in Dallas, Texas, that the prevailing local rates imposed by this Court were too low. Since any decision in counsel's favor would have the effect of fundamentally changing this Court's procedure in awarding fees, the matter was taken under advisement.

## DISCUSSION OF LAW

Passing judgment on the propriety of an attorney's fee request is one of the least pleasant duties imposed on a bankruptcy court. However, while this Court does not relish second-guessing the efforts of an attorney as detailed in a fee request, this Court finds such a duty to be non-dischargeable.

As stated earlier, this Court does not dispute the ability of counsel nor does this Court find fault with the quality of the work thus far performed in this bankruptcy. What this Court does dispute, however, is the contention that counsel's efforts on behalf of a Debtor whose case is pending in Beaumont, Texas, should be compensated at a rate significantly in excess of the rates charged and awarded to local counsel who demonstrate similar abilities and results. This issue of the appro-

priateness of limiting non-local counsel to local rates has been well represented in the case law and it is the opinion of this Court that a brief review of the history behind this issue is in order.

Prior to the Bankruptcy Reform Act of 1978, the standards for the award of attorneys' fees in bankruptcy cases was governed by the Bankruptcy Act of 1898. Simply put, the old Bankruptcy Act left bankruptcy courts little discretion in the award of attorneys' fees and as a result, in accordance with the notion of conservation of the estate, the fee awards were generally as miserly as permitted by law. *Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981) (award should be made at the lower end of the spectrum of reasonableness).

The enactment of the Bankruptcy Reform Act of 1978 effected significant changes in the standards for the award of attorneys' fees. The new provisions governing the compensation of attorneys, especially 11 U.S.C.A. § 330(a),[1] substantially changed the standards for the award of an attorney's fees. As noted by a leading commentator on bankruptcy matters, the House Report on § 330(a) states, as follows:

The effect of § 330 is to overrule ... cases that require fees to be determined based on notions of conservation of the estate and economy of administration. If those cases were allowed to stand, attorneys who could earn much higher incomes in other fields would leave the bankruptcy arena. Bankruptcy specialists, who enable the system to operate smoothly, efficiently and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who could not find other work and those who practice bankruptcy law only occasionally almost as public service. Bankruptcy fees that are lower than fees in other areas of the legal profession may operate properly when the attorneys ap-

---

**1.** ... the court may award ... a debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney

... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title.

pearing in bankruptcy cases do so intermittently, because a low fee in a small segment of a practice can be absorbed by other work. Bankruptcy specialists, however, if required to accept fees in all their cases that are consistently lower than fees they would receive elsewhere, will not remain in the bankruptcy field. H.R.No. 95–595, 95th Cong., 1st Sess. 329 (1977) *quoted in* 2 *Collier on Bankruptcy* para. 330.05, at 330–61 (15th ed.1991). However, since that time, a considerable dispute has arisen among the courts as to the meaning in § 330(a)(1) of the phrase "cost of comparable services."

Some courts have held that the phrase "comparable services" permits the award of attorneys' fees based on comparable services performed by a non-bankruptcy attorney in the locale in which the fees are requested, i.e. the local rate. Other courts have interpreted the phrase, "comparable services", more broadly to allow a non-local attorney to charge a fee at a rate based on the cost of comparable services performed by a non-bankruptcy attorney in the locale in which such attorney practices, i.e. the non-local rate. This line of cases is sometimes referred to as advocating the use of a regional or national rate formula for the award of attorneys' fees. Finally, a third line of cases functionally blends the two preceding approaches to use a local rate for comparable non-bankruptcy services as a base line for fee awards in the bankruptcy forum but vests great discretion in the trial court to allow substantial deviations from the base line fee awards based on the facts and circumstances of individual cases.

Courts are reluctant to commit to endorsing either a strict local rate requirement or a strict non-local rate requirement. An example of the former is the case of *In re Wendy's of Montana, Inc.*, 111 B.R. 314 (Bankr.D.Mont.1988) in which the court adopted the local rule and reduced non-local counsel's requested fees from $175.00 per hour to reflect the $110.00 per hour local rate in spite of the specific findings that

the case was too complex for local counsel and was handled with great expertise by non-local counsel. However, while the court was of the opinion that it was constrained to apply the local rates for the purposes of fee awards, it mitigated the harshness of this rule by awarding a $10,-000.00 bonus based on the good results achieved.[2] A case often credited with representing the non-local rule is *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557 (Bankr.D.Utah 1985). In *Jensen–Farley*, the court was of the opinion that the rate of an attorney's compensation should be fixed by market forces, i.e. the laissez-faire approach. In addition to expressing great confidence in the ability of market forces to assess appropriate wages, the court also expressed its reluctance to "sit as a wage board." *Id.* at 579. However, in spite of criticism of *Jensen–Farley* for its pro non-local rate approach[3] this court is of the opinion that the holding in *Jensen–Farley* may have been tempered by the fact that the bankruptcy case in *Jensen–Farley* was a national case involving creditors from over 45 states.

More generally supported, is the approach which uses local rates as the starting point in the calculation of fee awards while still allowing the court great discretion to deviate significantly from local rates in the award of fees if the case is extremely complex or national in scope. Still, many courts are reluctant to award non-local fees lightly. Typical of the attitude and reasoning of these courts is *In re Seneca Oil Co.*, 65 B.R. 902, 911 (Bankr. W.D.Okl.1986):

When a case is not national, the market is limited to the geographic area involved. The case involving a debtor doing business principally in a certain region, concerning assets in that region, and primarily including parties from that region is of limited geographic area and thus of a limited market. So long as competent bankruptcy attorneys are available within that region, the market

---

2. The bonus award corresponded approximately with the amount of the fees previously reduced.

3. *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D.Okl.1986) (specifically rejects *Jensen–Farley*).

rate within it prevails. If attorneys from outside the region wish to practice in a regional market, their rates should be competitive with rates for comparable services found within the regional market.

Similarly, the court in *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823, 843 (Bankr. D.Vt.1987) held that with the exception of complex cases of national scope two justifications exist for using local rates. First, the use of local rates generally reduces the burden on creditors through lowering the costs of administering the estate. Second, the court was swayed by economic considerations since "[t]he estate arises within a local economy. The fixed cost and the overhead factors, not the variable, are determined locally. Legal fees and other professional costs are generally considered as overhead. Accordingly, local rates should apply." *Id.* at 843. This sentiment was echoed by *In re Property Co. of America Joint Venture,* 110 B.R. 244 (Bankr. N.D.Tex.1990) in which the court, after finding no national significance in the case, reduced the national rate fee request of Dallas attorneys to reflect the Dallas local rates. Much of the court's opinion was tempered by the fact that the primary attorneys involved were Dallas attorneys paying local rents, utilities, salaries and overhead. Still another case of note is *In re Global Intern. Airways Corp.,* 38 B.R. 440 (Bankr.W.D.Mo.1984). The *Global* case was an extremely complicated Missouri airline bankruptcy case involving the services of Dallas, Texas, attorneys. In passing judgment on the Dallas attorneys' fee request, the court found that even though the hourly rate requested by the Dallas attorneys was more than twice the local prevailing rate the work performed was not twice as efficient. After concluding that local counsel could have accomplished the same results in the case for half the cost, the court reduced the Dallas attorneys' fee request accordingly. However, other courts, faced with non-local fee requests, have found that such requests are meritorious in light of the circumstances of the underlying bankruptcy case.

Generally, factors mitigating in favor of awarding fees based on non-local rates include the absence of available local counsel with necessary personnel and resources as well as the need for expertise uncommon to local firms. *In re Southern Indus. Banking Corp.,* 41 B.R. 606, 612–613 (Bankr.E.D.Tenn.1984). In *In re Microwave Products of America, Inc.,* 104 B.R. 900 (Bankr.W.D.Tenn.1989) the court allowed an attorney to charge California rates in a very complex Tennessee case. Since this particular attorney was the original draftsman of many of the documents executed prior to the bankruptcy filing which were integral to the reorganization, the court determined that having the original draftsman interpret, construe and decipher these documents resulted in a substantial savings to the estate rather than incurring the expense of local attorneys expending time familiarizing themselves with the pertinent documents. Similarly, in *In re Yankton College,* 101 B.R. 151 (Bankr.D.S.D.1989) the court awarded fees based on Nebraska rates for a South Dakota reorganization. The court made specific findings as to the unavailability of local counsel as well as the probable lack of the ability of a local firm to handle a case of this magnitude. In fact, the court was so impressed with the phenomenal results achieved (hundred percent payout with a one million dollar surplus) that the court allowed a fifteen percent fee enhancement. In *In re Frontier Airlines, Inc.,* 74 B.R. 973 (Bankr.D.Colo.1987) the court found that the complexity of the case (airline reorganization) and the fact that most of the comparable Denver attorneys were previously committed to other aspects of this case, justified an award of non-local fees to New York counsel.

Complexity of the underlying case, as well as the unavailability of local counsel, was also a factor in the court's decision in *In re Washington Mfg. Co.,* 101 B.R. 944 (Bankr.M.D.Tenn.1989) to award New York counsel New York fees for a Nashville, Tennessee, Chapter 11. The court observed that this was an extremely complex case; the debtor had 3800 employees, gross sales of $158,000,000.00 and creditors in 27

states. In addition, the court made specific findings that debtors' choice of local counsel was unable to undertake representation due to conflicts of interest. Based on the exigencies of the case, and the regional nature of the debtor's holdings and creditors and the involvement of non-local counsel for several creditors, the court allowed a deviation from the local rates. *Id.* at 952.

More important than local versus national rates to this Court's decision as to the propriety of Applicant's motion is an examination of the bankruptcy case and Applicant's work product in connection with that case. Debtors' Chapter 11 plan of reorganization is concerned with reorganizing Debtors' family-owned and family-operated business comprising the ownership and operation of several oil and gas interests. The scale of Debtors' reorganization is not particularly large with listed assets of approximately $765,000.00 and listed liabilities of approximately $630,000.00. As with most reorganizations of this type, while numerous creditors may be listed, only a few creditors hold significant claims against the estate. For all intents and purposes, Debtors' creditors are Texas affiliated. All of Debtors' oil and gas interests are located in the Eastern and Northeastern part of the state. Given the beforementioned facts, this Court can safely conclude that this is not a case of national scope.

The Court's next analysis is to determine whether the nature of this particular reorganization was so unusual or complex as to be beyond the abilities of local counsel. Applicant's fee application detailed a non-exclusive list of activities which had been performed on behalf of the Debtors as of the date of the filing of the application. While admittedly the list is non-exclusive, this Court finds that applicant has done an adequate job of detailing the major points of his representation as follows:

(A) Consultation with Debtors prepetition to determine possible alternatives and/or strategies related to the necessity of filing a Chapter 11 bankruptcy petition under the Bankruptcy Code;

(B) Preparation and filing of Debtor's bankruptcy petition, schedules, statements and other documents relating to the bankruptcy petition filing; and complying with all administrative rules and regulations;

(C) The attendance at and representation of Debtors at various scheduled hearings and settlement conferences held with various creditors and/or their attorneys;

(D) Drafting and filing of various pleadings with the bankruptcy court which have benefitted Debtors and the bankruptcy estate;

(E) Filing turnover proceedings, which resulted in Debtors receiving ultimately approximately $75,000.00, some of which was paid voluntarily after said attorneys took action;

(F) Investigating, filing and proceeding with a sizeable claim for administrative expenses against the estate of Debtor, Lonny Kenneth Cambern which has the prospect of obtaining funds which can be used to pay unsecured creditors;

(G) Investigating with the assistance of an expert the value of estate assets which results in the conclusion that Debtors are reorganizable and significant payments can indeed be paid to probably all classes;

(H) Defending a motion to prohibit use of cash collateral and prosecuting Debtors' motion to use cash collateral to a successful settlement which has resulted in approximately seven (7) creditors being able to have already received adequate protection payments;

(I) Investigating various claims for the estate and against the estate which has the prospect of successfully preventing dismantling the estate and the loss of assets;

(J) Formulating and the filing of a plan of reorganization, which has been filed; and

(K) Various other services as more fully set forth on exhibits attached to the fee application.

Debtors' file, while quite lengthy, belies the fact that the events which have transpired in Debtors' case are fairly routine for this type of mid-level reorganization. In coming to this conclusion, the Court is

not attempting to denigrate the efforts of counsel but merely to state that the issues involved in Debtors' case are not particularly novel or extraordinarily complex. The Court had an opportunity to examine counsel's performance at the various hearings attendant to Debtors' reorganization, particularly a hotly contested cash collateral hearing, and found that while counsel served Debtors with great skill the abilities demanded of counsel and the results achieved could have just as readily been obtained from numerous local bankruptcy attorneys. The skill and abilities of counsel notwithstanding, this Court has not found any appreciable savings of time in progressing with this plan of reorganization that justifies an hourly rate in excess of the Court's informal local fee cap. As previously mentioned, counsel has a regional reputation for his abilities in the practice of bankruptcy law. This Court has no doubt that counsel would be able to handle almost any bankruptcy case conceived of under the Code. However, in spite of this Court's admiration for counsel's abilities, this Court can come to no other conclusion than that the abilities of counsel are excessive in relation to the demands placed upon him by the issues arising in Debtors' bankruptcy. Simply put, since this case is not particularly complex or national in scope and the results thus far achieved are fairly typical for a reorganization of this type, this Court can find no justification that merits an upward adjustment of counsel's fees.

■ One last issue that the Court wishes to address is the contention of counsel that this Court's informal mandatory fee cap is unrealistically low in comparison to the cost of comparable services in the local non-bankruptcy forum. The Court believes that there is some merit to counsel's argument. Determinations of the appropriate rates to be employed in the award of attorney's fees is well within the province of the Court before which such application is pending:

> "A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by a particular attor-ney; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers."

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.*, 487 F.2d 161, 169 (3rd Cir.1973). In sum, judges are empowered to take judicial notice of the prevailing fees charged within their jurisdiction.

This Court is aware that bankruptcy practitioners in the Northern, Western and Southern Districts of Texas, comprising the bankruptcy meccas of Dallas, Austin, San Antonio and Houston are generally privy to a higher base rate in the award of fees. Counsel has testified that the base rate that he is regularly awarded in the Dallas/Fort Worth area averages between $200.00 and $225.00 per hour. However, this Court does not find such comparisons useful. Generally speaking, the rates that attorneys can charge are a function of whether the local economy in which they practice is willing and able to support such rates. Higher rates in Dallas or Houston, Texas, is simply a variable in the higher cost of living that is endemic to those cities. On the other hand, the Eastern District of Texas has a lower standard of living and hence lower relative attorney hourly rates.

For the two years that this Court has presided over bankruptcy cases in the Eastern District of Texas, this Court has imposed, with few exceptions, the $150.00 mandatory fee cap. Only on rare occasions when a case has been extremely complex has this Court deviated from its mandatory base line. However, in this Court's opinion, the time is ripe for a little change. While it is unlikely that bankruptcy practitioners before this Court will ever regularly be awarded fees based on hourly rates customarily awarded in the larger cities of Texas, this Court is of the opinion that retention of attorneys of counsel's caliber demands an upward adjustment of this Court's base line fee to $165.00 per hour. This higher base rate is appropriate to alleviate some of the inequity caused by this Court's willingness to award four and five year associates up to $125.00 per hour while capping the hourly rates of their

managing partners at an amount only $25.00 higher.

As previously stated, counsel has practiced law for over 30 years, the last ten of which have almost exclusively been in the area of bankruptcy law. Counsel is doubly certified as a specialist in both consumer and business bankruptcy reorganizations. Counsel is a shareholder in his firm. While this Court stands by its position that counsel's achievements in this case do not merit an upward adjustment from the local rate allowed by this Court, counsel has, however, convinced this Court that even in this jurisdiction, comparable attorneys of counsel's caliber are worth $165.00 per hour and the Court will adjust his fee request accordingly.

In accordance with the reasons set forth in this memorandum, it is the opinion of this Court that Debtor's Motion for Reconsideration of the Order Approving Allowance of Compensation and Expenses be APPROVED in part to permit the award of additional fees in the amount of $2,321.25.